IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| THOMAS HARLEY, # 162293, ) | Civil Action No. 3:06-425-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| OFFICIAL C/O MONTGOMERY; ) | |
| PRISON MEDICAL STAFF AT LCI; AND ) | |
| MEDICAL ADMINISTRATOR, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| _____ ) | |

      This action was filed by the pro se Plaintiff on February 27, 2006. An amended complaint was filed on June 6, 2006. At the time of the alleged incidents, Plaintiff was an inmate at the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). He is currently incarcerated at the Broad River Correctional Institution of SCDC.

      On October 27, 2006, Defendants Medical Administrator and Prison Medical Staff at LCI filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on October 31, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on November 6, 2006. On April 17, 2007, Defendant CO Montgomery ("Montgomery")[1] filed a motion for summary judgment. A second Roseboro order was issued on April 23, 2007. Plaintiff filed a response on April 25, 2007.

---

[1] Defendants' counsel states that he was advised that Defendant Montgomery recently passed away. See Ex. A to Montgomery's motion to for summary judgment. No notice of substitution has been filed in this action.

DISCUSSION

Plaintiff appears to allege that Defendant Montgomery used excessive force against him by slamming the cell door food flap down on his hand, causing injury. He also claims that Defendants failed to provide him with medical care after the incident. Defendants Prison Medical Staff at LCI and Medical Administrator contend that they are entitled to summary judgment because: (1) they are not persons amenable to suit under 42 U.S.C. § 1983 as there is no such individual known as prison medical staff or medical administrator; (2) they are entitled to Eleventh Amendment immunity from monetary damages; (3) Plaintiff has failed to state a claim against Defendant Medical Administrator under a theory of supervisory liability; (4) Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs; (5) they are entitled to qualified immunity; (6) Plaintiff's claims concerning grievances fail as there is no constitutional right to a grievance system; (7) Plaintiff fails to state a claim under the South Carolina Tort Claims Act ("SCTCA") such that any state law claims should be dismissed; and (8) this action should be dismissed under 28 U.S.C. § 1915(e) and § 1915A and count as a strike. Defendant Montgomery contends that he is entitled to summary judgment because: (1) he is not a person amenable to suit under § 1983; (2) he is entitled to Eleventh Amendment immunity; (3) he is entitled to qualified immunity; (4) Plaintiff fails to establish a claim for excessive use of force; (5) Plaintiff fails to establish a claim for denial of medical care; (6) Plaintiff fails to establish a claim concerning grievances; (7) Plaintiff fails to state a claim under the SCTCA; and (8) this action should be dismissed under 28 U.S.C. § 1915(e) and § 1915A and count as a strike.

2

1.      Medical Claims

Defendants Medical Administrator and Prison Medical Staff at LCI contend that Plaintiff fails to show that they were deliberately indifferent to any of Plaintiff's serious medical needs. They contend that the records and affidavit of LCI Nurse Terri Huff ("Huff") clearly establish that Plaintiff has never been refused medical care for his alleged finger injury and there is no indication in the medical records of a complaint by Plaintiff that an officer injured his finger. Defendant Montgomery contends that Plaintiff fails to establish a claim for denial of medical care against him because he was never asked by Plaintiff to be taken to medical and records show that Plaintiff made no complaints to medical personnel about the alleged incident.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

3

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

4

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent as to any serious injury from the alleged use of force. Plaintiff's medical records indicate that he suffered a broken finger while playing basketball on March 24, 2005. He was treated by SCDC medical personnel on that date. An x-ray on March 28, 2005, revealed a fracture of Plaintiff's right pinky finger and he was given a splint. Plaintiff had a follow up appointment in the orthopaedic clinic on April 6, 2005. He was treated at the orthopaedic clinic again on May 9, 2005, at which time it was noted that Plaintiff's finger was healing without problems. Although Plaintiff claims he was denied physical therapy, the medical records make no mention of an order for physical therapy. From the time of Plaintiff's consultation with the orthopaedic clinic in May 2005 until July 2006, Plaintiff was seen by medical personnel on numerous occasions and there is no indication of any further complaints about pain in his finger. See Huff Aff; Plaintiff's Medical Records.

    2.    Excessive Force

Plaintiff alleges that Officer Montgomery kicked the food flap in his cell on March 30, 2005, which closed on and injured his finger. Defendant Montgomery contends that Plaintiff's Eighth Amendment claim fails because Plaintiff has not established the subjective or objective components of an Eighth Amendment claim.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim

5

requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff alleges that his finger was reinjured as a result of the incident causing him pain and damage to his ulnar nerve. Review of the medical and other records, however, fails to reveal any evidence of any injury from the incident. Thus, Plaintiff has not met the objective component of his excessive force case and has not shown that Defendants violated his Eighth Amendment rights.

Defendant's use of force was de minimis. See e.g., Norman v. Taylor, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de

minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024 (1992); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order to inmate and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force; Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992); Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988

7

WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show he meets the objective component, he fails to show he meets the subjective component of his Eighth Amendment claim. Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). When an inmate claims prison officials used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective portion of an excessive force claim requires a prisoner to demonstrate that officials inflicted force sadistically and maliciously for the sole purpose of causing harm. See Whitley, 475 U.S. at 320-21; Williams v. Benjamin, 77 F.3d at 761. The Supreme Court has directed that several factors should be balanced in determining whether prison officers acted maliciously and sadistically. These factors, originally set out in Whitley, include:

> (1) the need for the application of force,
>
> (2) the relationship between that need and the amount of force used,
>
> (3) the threat "reasonably perceived by the responsible officials," and

(4) "any efforts made to temper the severity of a forceful response."

3:06-cv-00425-RBH     Date Filed 06/20/07    Entry Number 54     Page 9 of 15

Hudson, 503 U.S. at 7 (citations omitted); see also Williams v. Benjamin, 77 F.3d at 762. The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. Hudson, 503 U.S. at 7.

Defendants provide that Plaintiff is serving a life sentence for murder. Montgomery states that Plaintiff has a history of rules violations, including throwing things at officers through his food flap. Montgomery Aff., Para. 12. SCDC has a policy of keeping food flaps closed, for safety and security reasons. Id., Para. 8. Montgomery states that he handed Plaintiff something through the food flap, and Plaintiff refused to allow the flap to be closed. Id., Para. 11. He states he gave Plaintiff several orders to move his hand, so that the flap could be closed. Montgomery Aff., Para. 12; Richard McConico Aff., Para. 4.[2] Montgomery states that Plaintiff refused at first to follow the orders, but when Montgomery attempted to close the flap, Plaintiff moved his hand. Montgomery Aff., Para. 13; Richard McConico Aff., Para. 5.

In this case, analysis of the factors set out in Whitley fails to show that Defendant Montgomery acted maliciously and sadistically, and thus Plaintiff fails to establish an Eighth

---

[2]Richard McConico ("McConico") is a correctional officer at LCI. He states that he worked the night shift in Plaintiff's unit on March 30, 2005; he witnessed Montgomery give multiple orders to Plaintiff to remove his arms from the food flap; officers need to keep flaps closed for security reasons, especially with an inmate who has a history of causing problems; Plaintiff has been a security problem and has been placed in lock-up on numerous occasions for violating the policies and procedures of LCI; after Plaintiff refused to obey the direct orders, Montgomery advised Plaintiff that he was going to close the food flap; when Montgomery moved to close the food flap, Plaintiff finally removed his arms from the food flap and Montgomery was able to close the food flap; McMonico did not see Plaintiff have any part of his body get caught or shut in the food flap; Plaintiff did not advise McConico or Montgomery of any injury and did not request medical attention; Plaintiff filed a grievance with SCDC on April 7, 2005, alleging his finger was injured in the food flap; and on April 17, 2005, McConico was asked to complete an incident report. McConico Aff. In the incident report, McConico wrote that he observed that Plaintiff had an injury to his finger prior to the alleged use of force incident. Ex. A to McConico Aff.

10

Amendment claim. Here, there was a need for a use of force and there was a threat reasonably perceived by Defendants because Plaintiff refused direct orders and an open food flap was a possible security and safety threat to officers. The use of force appears to be appropriate to the situation. As discussed above, Plaintiff fails to show anything more than de minimis injury from the alleged incident. Defendants also appear to have attempted to temper the amount of force used.

    3.    <u>Grievances</u>

In his pleadings, Plaintiff appears to assert that his grievances were not handled according to SCDC policies and procedures. Even if this claim (which does not appear to be specifically plead in the complaint) is properly before the court, Plaintiff fails to establish a constitutional violation. Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see</u> <u>also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

    4.    <u>Supervisory Liability</u>

Defendant Medical Administrator contends that he cannot be held liable under a theory of supervisory liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d

1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Medical Administrator was personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that this Defendant was deliberately indifferent to, or tacitly authorized, any of these alleged actions or inactions. Thus, Plaintiff cannot show that Defendant Medical Administrator is liable on a theory of respondeat superior or supervisory liability.

  5.  Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

13

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

      6.    <u>State Law Claims</u>

Defendants contend that Plaintiff has failed to state a claim under the SCTCA and therefore any state law claims should be dismissed. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

CONCLUSION

Based on review of the record, it is recommended that the motion for summary judgment of Medical Administrator and Prison Medical Staff at LCI (Doc. 33) be granted. It is also recommended that the Defendant Montgomery's motion for summary judgment (Doc. 44) be granted.

      Respectfully submitted,

      s/Joseph R. McCrorey
      United States Magistrate Judge

June 20, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).